UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
DR. MARK JOHNSTON, M.D. M.P.H.,

                Plaintiff,

     -v-                           5:20-CV-1497

CITY OF SYRACUSE, POLICE
OFFICER VALLON SMITH, CHIEF
OF POLICE KENTON T. BUCKNER,
and DOES 1-200,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:              OF COUNSEL:

LAW OFFICES OF            CHARLES A. BONNER, ESQ.
   BONNER & BONNER      A. CABRAL BONNER, ESQ.
Attorneys for Plaintiff
475 Gate 5 Road, Suite 211
Sausalito, California 94965

RYDER LAW FIRM           JESSE P. RYDER, ESQ.
Attorneys for Plaintiff
6739 Myers Road
East Syracuse, New York 13257

CASE LAW LTD.             JEFFREY LOUIS
Attorneys for Plaintiff         MENDELMAN, ESQ.
580 California Street 12th Floor
San Francisco, California 94104

HANCOCK ESTABROOK, LLP   JOHN G. POWERS, ESQ.
Attorneys for Defendants     MARY L. D'AGOSTINO, ESQ.
1800 AXA Tower I
100 Madison Street
Syracuse, New York 13202

CITY OF SYRACUSE CORPORATION          DANIELLE PIRES, ESQ.
   COUNSEL                            SARAH MAE
Attorneys for Defendants                       KNICKERBOCKER, ESQ.
233 East Washington Street
Room 300 City Hall
Syracuse, New York 13202

CITY OF SYRACUSE LAW                  TODD M. LONG, ESQ.
   DEPARTMENT
Attorneys for Defendants
233 East Washington Street
300 City Hall
Syracuse, New York 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiff Dr. Mark Johnston, M.D. M.P.H. ("Johnston" or "plaintiff")
alleges that defendant police officer Vallon Smith ("Smith") used excessive
force against him on May 5, 2019.  To hear plaintiff tell it, Smith beat
plaintiff in the course of a false arrest, then exhibited deliberate indifference
to his medical needs in the aftermath.

Both, Johnston contends, violated his constitutional rights.  Plaintiff
blames Smith individually for that violation, but he also looks to hold Smith's
employer, the City of Syracuse ("Syracuse" or the "City"), its Chief of Police
Kenton T. Buckner ("Buckner"), and two hundred Doe defendants
(collectively "defendants") liable as well.  Defendants moved to dismiss that

complaint in part on June 8, 2021 under Federal Rule of Civil Procedure ("Rule") 12(b)(6) and for repleading or to strike portions of the complaint under Rules 8 and 12(f).  That motion, having been fully briefed, will now be considered on the submissions and without oral argument.

## II. <u>BACKGROUND</u>

On May 5, 2019, Johnston's daughter and son-in-law were running a race in the city of Syracuse.[1]  Dkt. 23 (Compl."), ¶ 11.  Plaintiff had watched the couple begin the race first thing in the morning, and by 10:30 a.m. plaintiff was driving to the race's endpoint to watch his family finish.  *Id.*  Riding along with plaintiff was his service dog.[2]  *Id.*

When Johnston got close to the finish line, a police officer directing traffic ordered him to turn around.  Compl. ¶ 11.  Plaintiff alleges that he complied, then pulled his car over to ask the officer how to get to his destination.  *Id.*

According to Johnston, the traffic cop took issue with this, and called for "service."  Compl. ¶ 11.  Defendant Smith apparently responded to that call and told plaintiff that he was under arrest.  *Id.*  Plaintiff claims that he then asked Smith why he was being taken into custody.  *Id.* ¶ 12.

---

[1] The facts are taken entirely from plaintiff's amended complaint as is appropriate on a motion to dismiss under Rule 12(b)(6).

[2] Plaintiff alleges that he is disabled, although he is unclear as to how.  Compl. ¶ 12.  *See id.* (plaintiff alleging that he is "disabled" without providing further details).

Johnston alleges that Smith's response was to punch him in the face and tackle him to the ground.  Compl. ¶ 12.  According to plaintiff, he fell on his left side, with his shoulder and left temple hitting the ground hard enough to knock him unconscious and lacerate his head.  *Id.*

Smith and other officers then allegedly "wrenched" Johnston's arms behind his back.  Compl. ¶¶ 12-13.  At the same time, the other officers ground plaintiff's wrists into the pavement, destroying his watch.  *Id.* ¶ 13.  Plaintiff claims that he had previously had surgery on his right shoulder, so the officers' manipulations of his arms were "extraordinarily painful."  *Id.*

In total, Johnston claims that he suffered two fractured ribs, a concussion, shoulder pain, open head wounds, contusions, and abrasions.  Compl. ¶ 14.  Plaintiff alleges that his injuries were so severe that he was unable to walk to the patrol car.  *Id.* ¶ 15.  Instead, plaintiff asserts that the officers dragged him to the vehicle.  *Id.*  In the process, plaintiff "claim[ed] ADA rights."  *Id.*  Apparently, the officers were unconcerned.  *Id.* ¶ 16.

According to Johnston, he then complained that he was suffering from chest pain and had difficulty breathing.  Compl. ¶ 17.  In response, an EMT took plaintiff's blood pressure and pulse.  *Id.*  The EMT allegedly reported both as perfectly normal, despite plaintiff's recent trauma and history of hypertension.  *Id.*  A "senior officer" apparently then arrived on the scene and dismissed plaintiff's complaints of injury, telling him he was "fine."  *Id.* ¶ 19.

Johnston continued to complain of breathing difficulties during his ride to the jail. Compl. ¶ 18. The police nevertheless left plaintiff in the patrol car "for five to ten minutes without sufficient ventilation" once they reached the jail. *Id.* In the meantime, plaintiff alleges that his car was towed with his service dog still inside. *Id.* ¶ 21. Eventually, his dog was placed in a pound. *Id.*

When Johnston finally arrived at the jail, a nurse took a look at plaintiff and directed that he be sent to the emergency room. Compl. ¶ 20. Evidently, although the complaint says nothing to this effect, plaintiff was taken back to the jail after his treatment. Plaintiff would spend twenty hours in jail before being arraigned the next day. *Id.* ¶ 23.

Johnston then claims that Smith wrote a falsified arrest report to cover for his violation of plaintiff's rights. Compl. ¶ 24. Specifically, he alleges that Smith "willfully" testified falsely by claiming that plaintiff had pointed and yelled at the arresting officers. *Id.* Plaintiff similarly decries as false Smith's claim that plaintiff grabbed him in a "bear hug," causing Smith to fear plaintiff would bite him. *Id.* In addition, Smith supposedly falsely reported that plaintiff refused to be handcuffed despite direct orders. *Id.* Whatever the truth of Smith's report, the charges against plaintiff were eventually dropped. *Id.* ¶ 87.

On December 4, 2020, Johnston filed a complaint in this district.  Dkt. 1.
At first, plaintiff's complaint was joined with another plaintiff's, but their
claims were severed on April 5, 2021.  Dkt. 22.  Plaintiff submitted an
amended complaint limited to only his own claims against his own
defendants on May 4, 2021.  Dkt. 23.

Johnston's amended complaint states fifteen causes of action: (I) excessive
force in violation of the Eighth Amendment to the Constitution of the United
States under 42 U.S.C. § 1983 ("§ 1983") against Smith; (II) imputed liability
for § 1983 claims against Syracuse and Buckner under *Monell v. Department
of Social Services*, 436 U.S. 658 (1978); (III) failure to prevent a conspiracy to
violate constitutional rights under 42 U.S.C. § 1986 ("§ 1986")[3] against all
defendants; (IV) false arrest in violation of the Fourth Amendment under
§ 1983 against Smith; (V) false imprisonment in violation of the Fourth
Amendment under § 1983 against Smith; (VI) assault and battery in violation
of the Fourth Amendment to the Constitution under § 1983 against Smith;
(VII) unlawful search in violation of the Fourth Amendment under § 1983
against Smith; (VIII) deliberate indifference to medical needs in violation of
the Fourteenth Amendment against Smith; (IX) ratification under § 1983
against both the City and Buckner; (X) false imprisonment under New York

---

[3] Plaintiff frames his § 1986 claim as one for negligent hiring, training, supervision, and retention.  Plaintiff's claim will be considered to the extent that his supervisory allegations can be reconciled with the requirements of a § 1986 claim.

state common law against Smith; (XI) assault under New York state common law against Smith; (XII) battery under New York state common law against Smith; (XIII) negligent hiring, training, retention and supervision under New York state common law against the City and Buckner; (XIV) a request for declaratory relief to the effect that plaintiff was factually innocent of the charges for which he was arrested and that Smith willfully made false charges in his incident report concerning the arrest; and (XV) a request for punitive damages.

On June 8, 2021, defendants moved under Rule 12(b)(6) to dismiss the complaint in part.  Dkt. 34.  They also moved to strike portions of the complaint or to order Johnston to replead under Rules 12(f) and 8, respectively.[4]  *Id.*  This decision now follows.

## III.  <u>LEGAL STANDARD</u>

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  That factual matter may be drawn from "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the

---

[4] That same day, the defendants in the severed case made a nearly identical motion. *See generally Moore v. City of Syracuse*, 5:20-CV-1641, Dkt. 18, *passim*.  Although the two motions were considered separately, the analysis for both is functionally the same.

complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Importantly, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). If the complaint and its additional materials—when viewed through that pro-plaintiff lens—are not enough to raise the plaintiff's right to relief on a claim above the speculative level, that claim must be dismissed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. <u>DISCUSSION</u>

Defendants' motion to dismiss can be grouped into six general headings: (1) Johnston's § 1986 claim is untimely and otherwise defective because plaintiff has failed to plead a claim under 42 U.S.C. § 1985 ("§ 1985"); (2) plaintiff has failed to allege any valid federal claims against Buckner; (3) plaintiff's federal assault and battery and false imprisonment claims are duplicative of his excessive force and false arrest claims, respectively; (4) plaintiff's state law claims are untimely; (5) plaintiff's requested declaratory relief is unavailable; and (6) portions of plaintiff's complaint are unnecessary and confusing, and should either be stricken under Rule 12(f) or else plaintiff should be required to replead under Rule 8.

In response, Johnston has asked for leave to amend his complaint to resuscitate his § 1986 claim and to add claims of conspiracy under 42 U.S.C. §§ 1983 and 1985

## A. <u>Section 1986 Failure to Prevent a Conspiracy Claims</u>

Section 1986 opens to liability "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [§ 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do[.]"  42 U.S.C. § 1986. That somewhat archaic construction cashes out to this: § 1983 "provides a cause of action against a person with the power to prevent a [§] 1985 violation who has failed to do so[.]"  *Poulos v. City of N.Y.*, 2015 WL 5707496, at *8 (S.D.N.Y. Sept. 29, 2015).  In other words, you cannot have a § 1986 claim without a viable claim under § 1985 supporting it.  *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993).

Defendants argue that Johnston's § 1986 claim must be dismissed because he has failed to plead the prerequisite § 1985 conspiracy claim. What is more, defendants argue that even if he had facially advanced a conspiracy claim, that claim would be hopelessly defective.

Johnston readily acknowledges that he failed to plead a § 1985 conspiracy claim.  However, he contends that his complaint provides the groundwork for that claim and asks for leave to amend his complaint to properly plead a

conspiracy under § 1985.  Plaintiff would also add a conspiracy claim under § 1983.

The Court will delve into whether Johnston will be permitted to amend his complaint to include a conspiracy claim later.  For now, it is enough to say that whether plaintiff's complaint hid a viable § 1985 conspiracy claim is irrelevant to whether his § 1986 claim can proceed.

On the face of the statute, § 1986 provides a one-year statute of limitations.  42 U.S.C. § 1986.  Johnston filed his complaint on December 4, 2020, but he provides no factual allegations occurring after May 5, 2019.  Accordingly, the clock ran out on plaintiff's § 1986 claim in May of 2020, some seven months before he filed his complaint.  Plaintiff's § 1986 claim is therefore time barred and must be dismissed.[5]

The Court also notes that Johnston's § 1986 claim is the only claim stated against "all" defendants, and in fact the only claim against the 200 Doe defendants.  Accordingly, the amended complaint states no cause of action

---

[5] To whatever extent plaintiff is arguing that the governor of the State of New York's executive order providing relief from statutes of limitations during the COVID-19 pandemic should salvage this claim, that argument is mistaken.  Section 1986 is a federal statute, and this is a federal court. The state of New York's orders may have an effect when federal statutes borrow from state statutes of limitations, but they cannot overpower Congress's provision of a specific limitations period.  *See, e.g.*, *Bonilla v. City of N.Y.*, 2020 WL 6637214, at *3 (E.D.N.Y. Nov. 12, 2020) (considering whether to borrow emergency tolling under executive order for federal statutes relying on state law for statute of limitations because federal statute was silent as to limitations period).  Plaintiff must be held to a statute of limitations of only one year for his § 1986 claim.

against anyone other than Smith and the City of Syracuse.  Does 1-200 must therefore also be dismissed.

Additionally, because Johnston cannot correct this temporal defect, amendment to this claim would be futile.  Dismissal must be with prejudice. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (noting that district courts need not grant leave to amend if amendment would be futile).

### B. *Monell* and Ratification Claims Against Defendant Buckner

Having dispensed with his § 1986 claim against Buckner, Johnston has only two remaining federal claims against the Chief of Police.  First, plaintiff alleges a *Monell* claim against Buckner as Syracuse Police Department's policymaker.  In *Monell*, the Supreme Court allowed for municipalities to be held liable under § 1983 for constitutional violations caused by that municipality's policy or custom.  436 U.S. at 694.

But as defendants correctly note, *Monell* did *not* allow for individuals to be held liable under the same theory, even if they made the policy that caused the injury.  *See, e.g.*, *Acquah ex rel. J.B. v. City of Syracuse*, 2020 WL 1510405, at *2 (N.D.N.Y. Mar. 30, 2020) (collecting cases holding that individual liability does not attach under *Monell*).  Johnston's *Monell* claim under Count II must therefore be dismissed as to Buckner.

Second, Count IX names Buckner as a defendant for a claim of "ratification."  However, ratification is a theory of *Monell* liability, not a

11

freestanding claim for supervisory liability under § 1983.  *See Hu v. City of N.Y.*, 927 F.3d 81, 104-05 (2d Cir. 2019) (discussing ratification as "theory of municipal action" for purposes of attaching *Monell* liability).  Accordingly, Johnston's Count IX ratification claim must be dismissed in its entirety.  Because there are fundamental defects in both the *Monell* claim against Buckner and the ratification claim generally, amendment to those claims would be futile, and dismissal must be with prejudice.

### C. <u>Federal Assault and Battery and False Imprisonment Claims</u>

Next, defendants set their sights on Johnston's § 1983 assault and battery and false imprisonment claims.  To defendants' minds, those claims are duplicative of plaintiff's § 1983 excessive force and false arrest claims.  Defendants are right.

A number of courts have held that a § 1983 claim alleging assault and battery is properly construed as an excessive force claim.  *Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 323 (W.D.N.Y. 2018) (noting that assault and battery claims under § 1983 "are properly formulated as excessive force claims").  Courts have done the same when a plaintiff brings both a false arrest and a false imprisonment claim.  *See, e.g.*, *Bowman v. City of Middletown*, 91 F. Supp. 2d 644, 660 (S.D.N.Y. 2000) (dismissing false imprisonment claim as "merely a species of false arrest").

Accordingly, Johnston's § 1983 assault and battery claim is duplicative of his excessive force claim, and his § 1983 false imprisonment claim is duplicative of his false arrest claim.[6]  Counts V and VI must be dismissed. Because amendment to those counts would be futile, that dismissal must also be with prejudice.

## D. <u>State Law Claims</u>

The parties also spar over Johnston's several state law claims.  In addition to plaintiff's explicit New York common law claims of: (X) false imprisonment; (XI) assault; (XII) battery; and (XIII) negligent training, hiring, retention, and supervision, he also implies in the complaint that he intends to bring a claim of trespass to chattels.[7]

Among defendants' varied attacks on Johnston's state law claims, they urge that he has failed to file those claims within the statute of limitations. Under New York General Municipal Law § 50-i, a plaintiff must commence an action against a New York municipality "within one year and ninety days after the happening of the event upon which the claim is based[.]"  Plaintiff's

---

[6] Whether a state law claim for assault and battery or false imprisonment can coexist with § 1983 excessive force and false arrest claims is a thornier issue that the Court need not decide for reasons explained below.

[7] However, the Court notes that plaintiff did not include a formal claim of trespass to chattels in his amended complaint.  He also failed to defend that potential claim in the face of defendants' motion to dismiss.

13

complaint stems from alleged misconduct on May 5, 2019, but he did not file his complaint until December 4, 2020.  Compl. ¶ 11; Dkt. 1.

A year and ninety days from May 5, 2019 is August 3, 2020, several months before Johnston filed his complaint.  Compl. ¶ 11; Dkt. 1.  On its face, plaintiff's complaint is untimely.  As plaintiff correctly points out, though, the Governor of the State of New York attempted to toll the statute of limitations—including for civil actions—from March 7, 2020 to November 3, 2020 to help the state navigate the ongoing COVID-19 pandemic. Exec. Order Nos. 202.8 (N.Y. Mar. 7, 2020); 202.67 (N.Y. Oct. 4, 2020).

If Johnston had filed his complaint on November 3, 2020, that would have been the end of the matter.  His complaint would have been unquestionably timely, and the Court would have considered his claims on the merits of his allegations.  But he did not.  Instead, his delay in filing his complaint complicates matters considerably.

How Johnston's delay throws a monkey wrench into the Court's analysis is itself a complicated question.  It seems clear that New York's governor intended to toll—rather than suspend—the statute of limitations through his pandemic-related executive orders.  *See* Exec. Order No. 202.67 (N.Y. Oct. 4, 2020) (noting that "any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding" was "tolled" until November 3, 2020); *see also*

14

*Lopez-Motherway v. City of Long Beach*, 2021 WL 965158, at *8

(E.D.N.Y. Mar. 15, 2021) (interpreting Executive Order 202.67 as intending

to toll statute of limitations).

But there is somewhat more doubt as to whether the governor had the

authority to toll the statutes of limitations, even in light of the pandemic.

New York Executive Law § 29-a authorizes a governor to "temporarily

suspend specific provisions of any statute . . . if compliance with [its]

provisions would prevent, hinder, or delay action necessary to cope with [a]

disaster."[8]  N.Y. EXEC. LAW § 29-a(1).

Many observers and litigants have argued that New York Executive Law

§ 29-a's authorization of only a temporary suspension means that New York's

executive branch lacked the authority to toll the statute of limitations instead

of merely suspending it.  *See, e.g.*, *Bastell v. Vill. of Rye Brook*,

144 N.Y.S.3d 556, at *2 (Sup. Ct. Westchester Cty. 2021) (unpublished table

opinion) (considering argument that governor lacked authority to toll rather

than suspend statute of limitations).

---

[8] Previously, the governor was permitted to "issue any directive during a state disaster emergency" so long as that directive was "necessary to cope with the disaster."  *See Lopez-Motherway*, 2021 WL 965158, at *8 (citing N.Y. EXEC. LAW § 29-a(1)).  That authority was subsequently revoked.  Bill Chappell, *New York Legislature Strips Cuomo of Extraordinary Emergency Powers, with a Caveat*, NPR (Mar. 5, 2021, 7:42 p.m.), https://www.npr.org/2021/03/05/974083354/new-york-legislature-strips-cuomo-of-extraordinary-emergency-powers-with-a-cavea (last visited Aug. 31, 2021).

Those same observants and litigants have put a lot of stock in the difference between those two terms.[9]  As some would define it, a toll pauses the limitations period: during the duration of the toll, the clock to file does not run.  *Lopez-Motherway*, 2021 WL 965158, at *7.  Once the toll ends, the clock resumes from where it was when the toll began, and the plaintiff has the rest of his limitations period to file his complaint.  *See id.*

Conversely, a suspension only means that the statute of limitations does not apply for the duration of the suspension.  *See Lopez-Motherway*, 2021 WL 965158, at *7.  Thus, a plaintiff must file his complaint before the suspension comes to an end for his claim to be timely.  *See id.*

If the governor lacked the power to toll the statute of limitations under New York Executive Law § 29-a, then the executive order could only have suspended the limitations period.  In the case of a suspension, Johnston's complaint filed weeks after Executive Order 202.67 expired is untimely and must be dismissed.  But of course, if the governor *did* have the authority to fully toll the statute of limitations, then plaintiff's state law claims were timely.

The handful of New York trial courts to have considered the governor's authority to toll statute of limitations have unanimously upheld that power.

---

[9] It must be said, though, that others do not.  *See Bonilla v. City of N.Y.*, 2020 WL 6686531, at *2 n.2 (E.D.N.Y. Oct. 3, 2020) (magistrate judge noting that distinction between suspension and toll can be ambiguous), *aff'd*, 2020 WL 6637214 (E.D.N.Y. Nov. 12, 2020).

*See, e.g.*, *Bastell*, 144 N.Y.S.3d 556, at \*2 (holding that governor had authority to toll statutes of limitations); *Chevra Gmilas Chesed Stropkover Joseph Chaim v. Washington Cemetery*, 148 N.Y.S.3d 370, 371 (Sup. Ct. Kings Cty. 2021) (same); *In re 701 River St. Assocs. LLC*, 148 N.Y.S.3d 365, 369 (Sup. Ct. Rensselaer Cty. 2021) (same).

Even so, no New York appellate court has so much as considered that question as of yet. The Court would thus be largely flying blind in answering a complicated question of state law. *See Phila. Indem. Ins. Co. v. Indian Harbor Ins. Co.*, 434 F. Supp. 3d 4, 10 (E.D.N.Y. 2020) (noting that federal court's duty in divining state law is to ascertain opinion of state's highest court, regardless of lower and intermediate court opinions).

Fortunately, it is a question that the Court need not answer at this time. Johnston relies on supplemental jurisdiction under 28 U.S.C. § 1367 to bring state law claims in this Court. Under that statute, district courts are vested with the discretion to decline to exercise supplemental jurisdiction if a claim "raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Principles of comity suggest that exercising this discretion becomes especially important when "those questions concern the state's interest in the administration of its government." *Franco ex rel. Valencia v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (quoting *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998)).

In short, the Court is satisfied that determining whether Johnston's claims are timely would involve grappling with a novel issue of New York state law dealing directly with the administration of the state's government. The Court must therefore decline to exercise supplemental jurisdiction over plaintiff's state law claims.  Counts X-XIII must therefore be dismissed.  *See, e.g.*, *Lopez-Motherway*, 2021 WL 965158, at *9 (declining to exercise supplemental jurisdiction over claims requiring decision on New York governor's authority to toll statutes of limitations during pandemic).

### E. Plaintiff's Request for Declaratory Judgment

In Count XIV of his complaint, Johnston calls on the Court for a declaratory judgment.  In a vacuum, there is nothing unusual about this. The Declaratory Judgment Act vests district courts with the discretion to "declare the rights and other legal relations of any interested party . . . whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

In exercising that discretion, the Second Circuit requires district courts to consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved"; and "(2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105 (2d Cir. 2012).  However, the Second Circuit has also favorably referenced

three factors employed in other Circuits to approach the same question:
(3) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; and (5) "whether there is a better or more effective remedy." *Id.*

Defendants do not take issue with Johnston's request for declaratory relief itself so much as with the substance of that request. Specifically, plaintiff calls the Court to declare him "innocent" of the charges for which Smith arrested him on May 5, 2019 and to conversely declare that Smith "willfully made False Statements in [his] Deposition Police Reports, and by so doing, each violation is punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law of the State of New York." Compl. ¶ 88.

Upon weighing the factors handed down by the Second Circuit, the Court must decline jurisdiction over Johnston's request for declaratory judgment. To begin, declaring plaintiff to be innocent would change nothing, because he is already presumed innocent under New York law until and unless he is found guilty. *New York v. Cruz*, 960 N.E.2d 430, 434 (N.Y. 2011) (Lippman, C.J., concurring in result) (noting that "defendant is presumed innocent and must be treated by the state . . . in a way that is consonant with that presumption"). As a consequence, declaring plaintiff to be innocent would not

advance his legal rights in any meaningful way.  *Niagara Mohawk*, 673 F.3d at 105.

Neither would this Court's ruling on Smith's culpability achieve any practical result.  It is only barely worth repeating that a criminal defendant is entitled to "a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt."  *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (cleaned up) (citing *United States v. Gaudin*, 515 U.S. 506, 510 (1995)).  But just as obviously, a jury in a civil case is only charged to reach a verdict by a preponderance.  *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 355 (1943).  By extension, any post-trial determination of Smith's culpability in this civil case would do nothing to advance his criminal culpability, which counsels against maintaining Johnston's claim for declaratory relief.  *Niagara Mohawk*, 673 F.3d at 105.

And of course, because affording Johnston his requested declaratory relief would not settle or clarify any relevant legal issues concerning his complaint, it would not finalize any of those issues, either.  *Niagara Mohawk*, 673 F.3d at 105.  That is to say nothing of the disrespect this Court would show to New York's courts by settling a state criminal issue in a federal civil case.  *Id.*

In sum, the two factors this Court is bound to consider in deciding whether to exercise jurisdiction over a claim for declaratory judgment cut strongly against exercising that jurisdiction now.  *Niagara Mohawk*, 673 F.3d at 105.

In addition, issuing declaratory relief establishing Smith's criminal liability under New York law would laugh in the face of comity.  *Id.*  The Court must decline to exercise jurisdiction over Johnston's request for declaratory judgment and Count XIV must be dismissed.

### F. <u>Defendants' Motion for Repleading or Alternatively to Strike</u>

Finally, defendants move under Rules 12(f) and 8 to either strike portions of Johnston's complaint or to direct him to replead.  To defendants' point, plaintiff's complaint is hardly what Rule 8 contemplates from a pleading: a "short and plain" statement establishing the court's jurisdiction, plaintiff's entitlement to relief, and the relief plaintiff seeks.  FED. R. CIV. P. 8(a). Instead, plaintiff spends a sizeable portion of the complaint making legal arguments and citing to case law.

In the end, however, Johnston's inclusion of legal arguments and other unnecessary matters in his complaint is not so problematic as to justify requiring him to replead entirely.  *See, e.g.*, *Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 275 (N.D.N.Y. 2012) (denying Rule 8 motion to replead despite complaint's inclusion of "numerous legal arguments, citations to case law, and responses to affidavits").

Neither is the fluff in Johnston's complaint so serious as to require that portions of it be struck.  After all, Rule 12(f) is a disfavored remedy. *Cummings v. City of N.Y.*, 2021 WL 1163654, at *3 (S.D.N.Y. Mar. 26, 2021).

Overcoming the general hostility for this remedy requires at least that the struck matter be "redundant, immaterial, impertinent, or scandalous." FED. R. CIV. P. 12(f).  Plaintiff's anticipatory legal arguments are none of those things.  They are at least related to the case, even if they are beyond the scope of what should be contained in a pleading.  Defendants' motion to strike or compel plaintiff to replead must therefore be denied.

### G. Plaintiff's Request for Leave to Amend

As noted earlier, Johnston has requested leave to amend his complaint to raise claims of conspiracy under §§ 1983 and 1985 in the course of opposing defendants' motion to dismiss.  To hear plaintiff tell it, amendment is justified because his complaint already contains allegations of conspiracy, it only lacks a formal acknowledgement of those conspiracy claims.

Thus, amendment would only be bringing the form of Johnston's complaint in line with its subject matter.  But defendants argue that the Court should nevertheless deny his request, because even if he did state a claim for conspiracy under § 1985, that claim would run afoul of the intracorporate conspiracy doctrine.  By defendants' logic, that doctrine precludes any conspiracy claim plaintiff could bring.  Thus, giving plaintiff leave to amend would be futile.

To resolve this conflict, then, the Court must consider the complaint in light of whether it could hypothetically state a viable § 1985 claim. That claim involves four elements: "(1) a conspiracy; (2) to deprive directly or indirectly any person of equal protection of the laws, or equal privileges and immunities; . . . (3) an act in furtherance of the conspiracy; [and] (4) whereby his person or property is injured or he is deprived of any right of a U.S. citizen." *Poulos*, 2015 WL 5707496, at *7 (citing *Mian*, 7 F.3d at 1087-88).

The intracorporate conspiracy doctrine deals with the first element—the existence of a conspiracy—in circumstances where the coconspirators are all members of the same corporation. The doctrine's root logic is that "because employees acting within the scope of their employment are agents of their employer, an employer and its employees are generally considered to be a single actor, rather than multiple conspirators." *Fed. Ins. Co. v. United States*, 882 F.3d 348, 368 (2d Cir. 2018).

The Second Circuit has itself applied the doctrine in considering § 1985 claims. *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 70 (2d Cir. 1976). Similarly, courts routinely extend the intracorporate conspiracy doctrine to municipal—in addition to commercial—corporations. *See Broich v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 247 (E.D.N.Y. 2009) (applying intracorporate conspiracy doctrine to employees of village).

However, as Johnston correctly notes, there is at least one exception to the intracorporate conspiracy doctrine.  The "personal stake" exception allows for a corporate employee to nevertheless conspire with his coworkers if he is "motivated by an improper personal interest separate and apart from that of their principal."  *Peck v. Cty. of Onondaga*, 2021 WL 3710546, at *15 (N.D.N.Y. Aug. 20, 2021).

A personal stake typically contemplates that the defendant "exercises official duties in unconstitutional ways to secure personal benefit."  *Peck*, 2021 WL 3710546, at *15 (cleaned up) (citing *Alvarex v. City of N.Y.*, 2012 WL 6212612, at *3 (S.D.N.Y. Dec. 12, 2012)).  Some examples of a personal stake include infringing a plaintiff's rights to cover up for a prior use of excessive force, engaging in race-based false arrests to boost arrest numbers in pursuit of a promotion, or acting out of pure malice.  *Ali v. Connick*, 136 F. Supp. 3d 270, 282-83 (E.D.N.Y. 2015).

Defendants are all employees of Syracuse.  Any act that any of these defendants could have taken in furtherance of a conspiracy would, as a consequence, be precluded under the intracorporate conspiracy doctrine unless plaintiff can establish an exception.  *See Broich*, 650 F. Supp. 2d at 247.  Johnston's request to amend his complaint to include a § 1985 claim would thus be moot unless he can point to a personal stake.

24

For most defendants, Johnston plainly fails.  He has not clarified any

unique benefit for Buckner or any of the Does to establish a personal stake.

He alleges only that these defendants "conspired, agreed, and acted in

furtherance of their agreements" to falsify testimony and deprive plaintiff of

his rights under state and federal law.  Compl. ¶ 25.  Not a word of that

allegation establishes that any of these defendants had any interest in

participating in a conspiracy outside the scope of their jobs.

But Smith is a different story.  The conspiracy that Johnston alleges

involved Smith falsifying an arrest report to cover for his use of excessive

force.  Courts routinely consider covering up for a use of excessive force to be

a personal stake sufficient to trigger the exception to the intracorporate

conspiracy doctrine.  *See Ali*, 136 F. Supp. 3d at 283 (noting that courts apply

personal stake exception when plaintiff alleges defendant violated rights to

cover for use of excessive force).  Accordingly, Smith at least had a personal

stake in the alleged conspiracy, and thus could have conspired with other

Syracuse employees.  *See, e.g.*, *Hill v. City of N.Y.*, 2005 WL 3591719, at *6

(E.D.N.Y. Dec. 30, 2005) (finding intracorporate conspiracy doctrine

inapplicable when defendant acted in own personal interest to cover up use of

excessive force).

Accordingly, Johnston's proposed conspiracy claim under § 1985 is not unequivocally precluded by the intracorporate conspiracy doctrine.[10] Perhaps, then, if given the opportunity to amend his complaint, he could present viable conspiracy claims. The question is whether the Court should grant him that opportunity.

Defendants object—correctly—that the proper mechanism to ask for leave to amend is not in a responsive pleading, but in a formal motion to amend under Rule 15. FED. R. CIV. P. 15(a)(2) (requiring party to request leave to amend pleading from court except once within twenty-one days of service of responsive pleading or motion). Additionally, in this District "[a] party moving to amend a pleading pursuant to [Rule 15] must attach an unsigned copy of the proposed amended pleading to its motion papers" including the proposed insertions and deletions of language. Local Rule of the Northern District of New York 15.1(a). Johnston did neither.

The Court notes that "it is within the court's discretion to deny leave to amend when leave is requested informally in a brief filed in opposition to a motion to dismiss." *Golub Corp. v. Sandell Trans., Inc.*, 2016 WL 4703734, at *6 (N.D.N.Y. Sept. 8, 2016) (cleaned up) (citing *Corsini v. Nast*, 613 F. App'x 1, 4 (2d Cir. 2015) (summary order)).

---

[10] Because this Court has recently concluded that it will extend the intracorporate conspiracy doctrine to § 1983 conspiracy claims as well, everything in this section applies with equal force to plaintiff's suggested § 1983 conspiracy claim. *Peck*, 2021 WL 3710546, at *15-16.

Under these circumstances, the Court is inclined to exercise that discretion. Johnston has, by his own admission, simply omitted a claim that he intended to state. Moreover, that omission has continued on through one amendment process already. Plaintiff's informal request for leave to amend must be denied.[11]

## V. <u>CONCLUSION</u>

Although Johnston's complaint of excessive force against the police is decidedly—and tragically—common in a number of ways, plaintiff has nevertheless managed to present a complaint full of unexpected novelty. For the most part, though, those unique wrinkles amounted only to distraction. Given the complexities afoot in the present state of New York state procedural law, the Court's hands are tied when it comes to plaintiff's state law claims. Similarly, plaintiff's muddled conspiracy claims must be laid to rest, at least for now. Nevertheless, the core of plaintiff's claim—that Smith and Syracuse share responsibility for plaintiff's alleged assault at Smith's hands—remains vital. That claim must proceed.

Therefore, it is

ORDERED that

---

[11] The Court also notes that conclusory claims of conspiracy cannot survive Rule 12(b)(6). *See, e.g.*, *Dubois v. City of White Plains*, 2018 WL 6025868, at *5 (S.D.N.Y. Nov. 16, 2018) (collecting cases for proposition that conspiracy claim only supported by conclusory assertions cannot survive motion to dismiss). If plaintiff's motion to amend does not provide significantly more concrete factual allegations to support a claim of conspiracy, that motion will be denied and plaintiff's conspiracy claims lost.[11] *See id.*

1. Defendants' partial motion to dismiss under Rule 12(b)(6) is GRANTED;

2. Counts: (X) false imprisonment under New York state law; (XI) assault under New York state law; (XII) battery under New York state law; (XIII) negligent training, hiring, retention and supervision; and (XIV) for declaratory relief are DISMISSED without prejudice;

3. Counts: (II) municipal liability under § 1983 through *Monell* against defendant Kenton T. Buckner; (III) failure to prevent a conspiracy in violation of constitutional rights under 42 U.S.C. § 1986; (V) false imprisonment under § 1983; (VI) assault and battery under § 1983; and (IX) ratification are DISMISSED with prejudice;

4. Defendant Kenton T. Buckner is DISMISSED from the case;

5. Defendants Does 1-200 are DISMISSED from the case;

6. Defendants' motion to compel plaintiff Dr. Mark Johnston to replead his complaint or in the alternative to strike portions of his complaint is DENIED;

7. Plaintiff Dr. Mark Johnston's informal request to amend his complaint is DENIED; and

8. Defendants Smith and the City of Syracuse must answer the amended complaint's Counts: (I) excessive force under § 1983 against Smith;

(II) *Monell* liability for the City of Syracuse; (IV) false arrest under

§ 1983 against Smith; (VII) unlawful search under § 1983 against

Smith; and (VIII) deliberate indifference to a serious medical need

against Smith no later than Tuesday, September 21, 2021.

IT IS SO ORDERED.


Dated:  September 2, 2021
        Utica, New York.

David N. Hurd
U.S. District Judge

29